# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

LISA ANN WEAVER, formerly known as LISA
ANN WEAVER-GIFFELS,

      Plaintiff-Appellee,

v

JAMES MICHAEL GIFFELS,

      Defendant-Appellant.

FOR PUBLICATION
November 10, 2016
9:00 a.m.

No.  327844
Kalamazoo Circuit Court
LC No.  2010-007630-DM

Before:  MURRAY, P.J., and HOEKSTRA and BECKERING, JJ.

MURRAY, P.J.

Typically a divorced parent's child support obligation ends when the child turns 18 years old, i.e., is no longer a minor.  An exception to that rule exists, however, when the child turns 18 but is still attending high school and is residing on a "full-time basis" with the child support recipient.  MCL 552.605b(2).  This case presents the question of what is meant by residing on a "full-time" basis with the child support recipient.  The circuit court, focusing on the parties' argument over the meaning of "full-time basis," concluded that residing on a "full-time" basis meant that the child must still be residing with the support recipient in full compliance with the child custody or parenting time order.  We hold that the support order is irrelevant to the analysis, and that an 18-year-old child is residing on a "full-time" basis with the support recipient when the child is *residing* only with that parent.  As a result, we reverse the circuit court order to the extent it ruled that compliance with the parenting time order constituted "full-time," and remand for the trial court to determine whether the 18-year-old resided with her mother on a full-time basis.

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant were married on August 3, 1991, and had two children, KG and MG, during the marriage.  Plaintiff filed for divorce, and the judgment of divorce eventually entered provided, among other things, that the parties would share joint legal and physical custody of the children.  Specifically, the judgment provided that the children would reside primarily with plaintiff while defendant would have parenting time in an amount agreed to by the

-1-

parties or, if no agreement could be reached, according to the schedule set forth in the judgment. Pursuant to the Uniform Child Support Order, incorporated by reference into the judgment of divorce, defendant was ordered to pay a total of $2,000 per month in child support.[1] The Uniform Child Support Order provided that defendant's support obligation for each child would continue as follows:

> through the end of the month of the later: 1) the child's 18th birthday, or 2) the last day of regularly attending high school full-time with the reasonable expectation of graduating, as long as the child is residing full-time with the recipient of support or at an institution, but under no circumstances shall the support obligation continue after the month that the child reaches age 19½.[2]

According to defendant, following entry of the judgment, the parties informally agreed to a parenting time arrangement that allowed the children to reside with plaintiff four days per week and with defendant three days per week. That arrangement continued for all times relevant to these proceedings.

KG turned 18 years old on November 26, 2014. At that time, she was still enrolled in high school, with an expected graduation date in the spring of 2015. After she turned 18, defendant filed a motion in the Family Division of the Kalamazoo Circuit Court praying for an order terminating his support obligation as to KG, retroactive to November 26, 2014. In support, defendant recited the pertinent portion of the Uniform Child Support Order providing that defendant's support obligation ended either (1) at the end of the month of KG's 18th birthday or (2) at the end of the month in which KG no longer attended high school full-time while residing on a "full-time basis" with plaintiff. Defendant argued that the latter provision was inapplicable—and thus his support obligation ended upon KG's 18th birthday—because while KG was still enrolled full-time in high school, she did not, nor had she ever, live with plaintiff "on a full-time basis;" instead, the parents shared physical custody, with KG spending three days per week with defendant.

A hearing on defendant's motion was held before a family division referee, who agreed with defendant, concluding that "[t]he statute [MCL 552.605b] is really quite clear:" it allowed for postmajority child support only where the child is "regularly attending high school on a full-time basis, with a reasonable expectation of completing sufficient credits to graduate," and is living with the recipient of support on a full-time basis. With regard to the term "full-time basis," the referee opined that the term "means what it says;" i.e., that the child must be living full-time with the recipient of support, not simply the full amount of time allotted to the recipient under the custody agreement. On the basis of these conclusions, a recommended order was submitted granting defendant's motion to terminate his support obligation to KG effective November 26, 2014.

---

[1] Specifically, defendant was ordered to pay $1,350 for one child and an additional $650 for the second child, for a total of $2,000.

[2] The Uniform Child Support Order comports with MCL 552.605b.

Plaintiff filed a written objection to the referee's recommended order, asserting that the referee's definition of "full-time basis," effectively requiring KG to reside with plaintiff at all times rather than merely the time allotted to her under the parenting time arrangement, was erroneous. Plaintiff asserted that "it would be unlikely that any child for whom child support is presently being ordered in the State of Michigan resides 'full-time' with either parent given the progression of shared parenting time, joint custody, etc." Thus, she argued, to define the term "full-time basis" in such a way as to require the child to live with the recipient of child support at all times, irrespective of a parenting time arrangement, would lead to an "inequitable" result, i.e., almost no parent supporting a postmajority child in high school would receive support.

After a hearing on plaintiff's objection, the circuit court entered an order denying defendant's motion to terminate his support obligation to KG as of her 18th birthday, holding that defendant's support obligation extended beyond KG's 18th birthday because she resided with plaintiff in full compliance with the custody order:

> The general rule is and has been that child support terminates after the child reaches 18 years of age. MCL 552.605B [sic] states an exception to the general rule; that is, if a child is regularly attending high school on a full-time basis with the reasonable expectation of completing sufficient credits to graduate from high school while residing on a full-time basis with the recipient of support or an institution, no case after the child reaches 19 years and sixth months of age, child support may be ordered. This Court has dealt with many cases where the issue of whether the child is regularly attending high school on a full-time basis with a reasonable expectation of completing sufficient credits to graduate from high school [was in dispute]; however, this is the first case that this Court has considered where the issue of "residing on a full-time basis with the recipient of support" was at issue. No case law has been found that defines the term "residing full-time". If full-time means all the time as is suggested by the Defendant and a child resided part-time with the payor of support pursuant to parenting time which happens in most every case, child support for a child over 18 would hardly ever be ordered. If it is analogous to full-time employment, an individual does not work all of the time, but only involving a standard number of hours of working time, or for the entire time appropriate to an activity. It makes more sense that "full-time with the recipient of support" means spending all of the time with the recipient of support that she is ordered to be with, and not somewhere else like a girlfriend's, a boyfriend's, or someone else's place, and not either parent. For example, in the present case, [where] the child spends four days with the mother and three days with the father, residing full-time with the recipient means that the child is residing the full four days with her mother.

> Clearly, MCL 552.605(2) [sic] requires courts to use the Michigan Child Support Formula which accounts for the parenting time split between the parties. 2013 MCSF 3.03(B) says, *"An offset for parenting time generally applies to every support determination whether in an initial determination or subsequent modification, whether or not previously given."* This Court does not read MCL 552.605b(2) as conflicting with [the MCSF], otherwise we would have to consider whether any overnights with the payor renders the recipient's residence a

"part-time" residence, and thereby undermine the intent of the statute and the policies embodied in the Michigan Child Support Formula.

. . . . Therefore, the Defendant would be required to continue to pay child support at the ordered rate until the child graduates from high school as long as the child is residing with the mother the four days per week which the child support was based upon.

Following entry of the trial court's order, we ultimately granted defendant's delayed application for leave to appeal, *Weaver v Giffels*, unpublished order of the Court of Appeals, entered October 15, 2015 (Docket No. 327844). We now reverse and remand for further proceedings.[3]

## II. ANALYSIS

This Court reviews a trial court's decision to modify child support for an abuse of discretion. *Burba v Burba (After Remand)*, 461 Mich 637, 647; 610 NW2d 873 (2000). However, we review de novo any attendant questions of law, which of course include the trial court's interpretation of court rules and statutes. *Id*.; *Neville v Neville (On Remand)*, 295 Mich App 460, 466; 812 NW2d 816 (2012). As we observed in *Lee v Smith*, 310 Mich App 507, 509; 871 NW2d 873 (2015), in determining the meaning of a statute,

[a] court's primary goal when interpreting a statute is to discern legislative intent first by examining the plain language of the statute. Courts construe the words in a statute in light of their ordinary meaning and their context within the statute as a whole. A court must give effect to every word, phrase, and clause, and avoid an interpretation that renders any part of a statute nugatory or surplusage. Statutory provisions must also be read in the context of the entire act. It is presumed that the Legislature was aware of judicial interpretations of the existing law when passing legislation. When statutory language is clear and unambiguous, courts enforce the language as written. A statutory provision is ambiguous only when it irreconcilably conflicts with another provision or is equally susceptible to more than one meaning. [Internal citations omitted.]

If a word or phrase is defined in the statute itself, then it must be applied as expressly defined. *Sanchez v Eagle Alloy, Inc*, 254 Mich App 651, 662; 658 NW2d 510 (2003). "However, where a statute does not define a term, resort to a dictionary for a definition is appropriate." *Id*.

It is well-settled that "[t]he parents of a minor child have a duty to support that child." *Paulson v Paulson*, 254 Mich App 568, 571; 657 NW2d 559 (2002), citing *Macomb Dep't of*

---

[3] At oral argument before this Court, defendant argued that because plaintiff had paid the child support as required by the contested order, this appeal was moot. We have specifically held to the contrary, *Dean v Dean*, 175 Mich App 714, 722; 438 NW2d 355 (1989), so we must resolve the merits of this appeal.

*Social Servs v Westerman*, 250 Mich App 372, 377; 645 NW2d 710 (2002). Historically speaking, absent an agreement by the parties, a parent's obligation to pay child support ended when the child reached 18 years of age; i.e., the age of majority. MCL 722.21(1)(a); *Lee*, 310 Mich App at 509-510. In fact, before 1990, courts were without authority to independently order a parent to pay postmajority child support. *Smith v Smith*, 433 Mich 606, 632-633; 447 NW2d 715 (1989), superseded by statute as explained in *Lee*, 310 Mich App at 509-510. In 1990, however, the Legislature enacted MCL 552.16a, which provided a narrow exception to the general rule that support obligations end at the age of majority. See 1990 PA 243; *Rowley v Garvin*, 221 Mich App 699, 706; 562 NW2d 262 (1997); *Lee*, 310 Mich App at 510. Specifically, MCL 552.16a provided, in pertinent part:

> (2) Beginning on the effective date of this section, the court may order support for the time a child is regularly attending high school on a full-time basis with a reasonable expectation of completing sufficient credits to graduate from high school while residing on a full-time basis with the payee of support or at an institution, but in no case after the child reaches 19 years and 6 months of age. . . .

See *Lee*, 310 Mich App at 510; *Rowley*, 221 Mich App at 705-706.

In 2001, the Legislature repealed MCL 552.16a and replaced it with the current statute, MCL 552.605b, which essentially mirrors the old version. See 2001 PA 106; 2001 PA 107; *Lee*, 310 Mich App at 511. Specifically, in its current form, MCL 552.605b provides, in pertinent part:

> (1) A court that orders child support may order support for a child after the child reaches 18 years of age as provided in this section.
>
> (2) The court may order child support for the time a child is regularly attending high school on a full-time basis with a reasonable expectation of completing sufficient credits to graduate from high school while residing on a full-time basis with the recipient of support or at an institution, but in no case after the child reaches 19 years and 6 months of age. A complaint or motion requesting support as provided in this section may be filed at any time before the child reaches 19 years and 6 months of age.
>
> (3) A support order entered under this section shall include a provision that the support terminates on the last day of a specified month, regardless of the actual graduation date.
>
> * * *
>
> (5) A provision contained in a judgment or an order entered under this act before, on, or after September 30, 2001 [the date the statute took effect] that provides for the support of a child after the child reaches 18 years of age is valid and enforceable if 1 or more of the following apply:
>
> (a) The provision is contained in the judgment or order by agreement of the parties as stated in the judgment or order.

-5-

(b) The provision is contained in the judgment or order by agreement of the parties as evidenced by the approval of the substance of the judgment or order by the parties or their attorneys.

(c) The provision is contained in the judgment or order by written agreement signed by the parties.

(d) The provision is contained in the judgment or order by oral agreement of the parties as stated on the record by the parties or their attorneys.

MCL 552.605b thus contains two mechanisms for continuing a parent's obligation to pay post-majority support for a child over the age of 18. First, under subsection (5), the parties may—as they always could—expressly agree that the parent will continue paying support for the child past the age of 18, regardless of whether the child satisfies the requirements for support in subsection (2). See *Lee*, 310 Mich App at 513. Second, under subsection (2), the trial court has "limited authority" to order postmajority support for children between the ages of 18 and 19½ who meet the requirements set forth in that subsection. *Id*.

The term "full-time basis" is not defined in MCL 552.605b or anywhere else in the relevant statutes, and neither this Court nor our Supreme Court have previously construed the term as it pertains to the residency requirement. Because the term is undefined, we resort to the dictionary. *Sanchez*, 254 Mich App at 662. The most closely related definition from Merriam-Webster's Collegiate Dictionary (11th ed) is that "full-time" means, "devoting one's full attention and energies to something." "Full," however, is defined in relevant part as "complete, esp in detail, number or duration." *Id*. Together, these definitions reveal that in this context residing on a "full-time" basis means a child must completely *reside* with the child support recipient for the duration of high school. In other words, for support to continue, the child must *reside*[4] only with the support recipient while completing high school.

Aside from the dictionary definitions, the provisions of several related statutes support—if not compel—the conclusion that compliance with the parenting time order is not a factor in deciding what "full-time" means. Initially, MCL 552.17a(1) provides that a circuit court has jurisdiction over the *custody* of a child only until that child reaches the age of 18, while child support generally ends at 18 but with two exceptions:

> *The court has jurisdiction* to make an order or judgment relative to the minor children of the parties as authorized in this chapter *to award custody of each child to 1 of the parties* or a third person *until each child has attained the age of 18 years* and may require either parent to pay for the support of each child until each child attains that age. Subject to section 5b of the support and parenting time and enforcement act,1982 PA 295, MCL552.605b, the court may

---

[4] We emphasize "reside" because, as discussed later in this opinion, that word is of equal importance in resolving this matter.

also order support as authorized in this chapter for a child of the parties to provide support for the child after the child reaches 18 years of age. [Emphasis supplied.]

Likewise, MCL 722.27(1)(a) provides that custody can only be awarded until the child reaches the age of 18:

> If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:
>
> (a) *Award the custody of the child* to 1 or more of the parties involved or to others and provide for payment of support for the child, *until the child reaches 18 years of age*. [Emphasis supplied]

Hence, these statutes allow a circuit court to exercise jurisdiction over the *custody* of a child until she reaches the age of 18, the age of majority, *Bowie v Arder*, 441 Mich 23, 53; 490 NW2d 568 (1992); *Heltzel v Heltzel*, 248 Mich App 1, 30; 638 NW2d 123 (2001), but in limited circumstances a court can order child support beyond the child turning 18.

Our Court has recognized these important but differing implications under the child custody and support laws from a child turning 18. In *Hayford v Hayford*, 279 Mich App 324, 327; 760 NW2d 503 (2008), we pointed out that an 18 year old is no longer subject to custody orders, but could be subject to child support orders:

> *Because petitioner reached majority age before seeking the PPO, the Child Custody Act was inapplicable with respect to custody issues, although it was still applicable regarding child support.* The Child Custody Act defines "child" as 'minor child and children. Subject to section 5b of the support and parenting time enforcement act, 1982 PA 295, MCL 552.605b, for purposes of providing support, child includes a child and children who have reached 18 years of age.' MCL 722.22(d). MCL 552.605b permits the entry of a child-support order in certain circumstances for a child who has reached 18 years of age. If the child is still in high school, MCL 552.605b provides that support may be ordered until he or she reaches 19 years and 6 months of age. Otherwise, as used in the Child Custody Act, "child" means a minor. [Emphasis supplied.]

Reaching the age of majority is significant because, as we said some time ago, "the Age of Majority Act provides that a person who attains eighteen years of age 'is deemed to be an adult of legal age for all purposes whatsoever and shall have the same duties, liabilities, responsibilities, rights and legal capacity as persons heretofore acquired at 21 years of age.' " *Adkins v Adkins*, 181 Mich App 81, 83; 448 NW2d 741 (1989), quoting MCL 722.52. See also *Smith*, 433 Mich at 614. Once KG turned 18, she was no longer subject to the custody order and was free to live with defendant, plaintiff, both (as she did when she was subject to the custody order), or somewhere else. But because of MCL 552.605b, she was still a "child" for purposes of the child support order, so long as the requirements of that statute were met.

Turning to the facts, there was no agreement in the parties' judgment of divorce obligating defendant, without qualification, to pay child support for KG until she obtained the age of 19½. Therefore, defendant's continuing obligation to pay child support for KG rested upon whether KG satisfied the requirements of MCL 552.605b(2) and the uniform support order incorporated into the divorce judgment; i.e., whether she was regularly attending high school on a full-time basis with the reasonable expectation of graduating while residing with plaintiff on a full-time basis. As to the first requirement, the record reflects—and defendant does not dispute—that KG was still attending high school on a full-time basis when she turned 18 on November 26, 2014,[5] and that she expected to graduate the following spring. Thus, the only dispute was whether KG was residing on a "full-time basis" with plaintiff. Based upon the law set forth above, the trial court erred in concluding that KG resided with plaintiff on a "full-time basis" on the exclusive basis that, after she turned 18, she continued living by the arrangements in the now inapplicable parenting time order.

However, this does not end the inquiry. Although the parties argue exclusively over the meaning of "full-time" basis, equally important—if not more so—is whether KG had the intent to "reside" full-time with the payee. In *Kubiak v Steen*, 51 Mich App 408, 413-414; 215 NW2d 195 (1974), we set forth both the legal and popular definitions of "reside."

> The Legislature did not use the word 'residence' or 'domicile' but 'resides.' That the term 'resides' may have a different connotation than the term 'residence' is without doubt.
>
> 'It has been said that the word 'reside' has two distinct meanings, and that it may be employed in two senses, and, in what is sometimes referred to as *the strict, legal, or technical sense, it means legal domicile as distinguished from mere residence or place of actual abode. In this sense the word 'reside' means legal residence; legal domicile,* or the home of a person in contemplation of law; the place where a person is deemed in law to live, which may not always be the place of his actual dwelling, and thus the term may mean something different from being bodily present, and does not necessarily refer to the place of actual abode. When employed in this sense, the word 'reside' includes not only physical presence in a place, but *also the accompanying intent* of choosing that place as a permanent residence.
>
> 'In what is sometimes referred to as its popular sense, the word 'reside' means the personal, actual, or physical habitation of a person; actual residence or place of abode; and it signifies being physically present in a place and actually staying there. In this sense the term means merely residence, that is, personal residence,

---

[5] With regard to the "regularly attending high school on a full-time basis" provision, this Court previously construed the term "full-time" consistent with the State School Aid Act, MCL 388.1601 *et seq.*, which provides that "students who take nine hundred hours of instruction over the course of a school year are considered 'full-time' equivalent pupils." *Rowley*, 221 Mich App at 708-709, citing MCL 388.1606(4)(t).

and it does not mean legal residence or domicile.' (Emphasis supplied.) 77 C.J.S. Reside, pp 285-286.

Utilizing the legal definition of "reside,"[6] which contains both a physical presence and an intent element, it is quite possible that KG could reside full-time with the payee based on her intent to make her mother's home her permanent residence, while still spending some overnights with her father, so long as her intent was to reside full-time with her mother. Because this issue was not raised before this Court or the trial court, there are no factual findings or decision to review. However, that issue must be decided by the trier of fact to properly resolve defendant's motion. In doing so, the trial court should consider, where relevant, the factors historically considered in determining where an individual resides or has their domicile:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household. [*Workman v DAIIE,* 404 Mich 477, 496-497; 274 NW2d 373 (1979) (citations omitted).]

" 'In considering these factors, no one factor is, in itself, determinative; instead, each factor must be balanced and weighed with the others.' " *Tienda v Integon National Ins Co*, 300 Mich App 605, 615; 834 NW2d 908 (2013), quoting *Workman*, 404 Mich at 496.[7] The trial court must make this fact-intensive determination, and only after doing so can it decide whether KG resided on a full-time basis with her mother. Consequently, we remand to the trial court for further proceedings consistent with this opinion.

---

[6] The Child Custody Act refers to the legal connotation of reside when referring to a child's legal residence under a custody order. MCL 722.31. See also *McGrath v Allstate Ins Co*, 290 Mich App 434, 443; 802 NW2d 619 (2010) (stating that "reside" may have a legal or technical meaning under the Child Custody Act as recognized in *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 163; 534 NW2d 502 (1995)). Although the custody order is no longer applicable to KG, the fact that the Legislature utilized that connotation is relevant to how we construe that term in a related statute.

[7] The *Workman* factors are relevant to the determination of where KG resides, even though *Workman* dealt with deciding one's domicile, a term not specifically referenced in the statute. This is so because (1) the legal definition of "reside" relates that term to domicile, *Kubiak*, 51 Mich App at 413; (2) domicile and residence are sometimes treated as having the equivalent meaning under Michigan law, *Grange Ins Co v Lawrence*, 494 Mich 475, 498-499; 835 NW2d 363 (2013), which is the case with MCL 552.605b(2), as it denotes a more permanent, singular residence by associating "reside" with "full-time basis." See *Tienda*, 300 Mich App at 615 (Noting that "the *Workman* Court set forth the following nonexhaustive list of factors to determine whether a person resides or is domiciled in an insured's household.").

Reversed and remanded for further proceedings.  We do not retain jurisdiction.  No costs, an issue of first impression being involved.  MCR 7.219(A).


/s/ Christopher M. Murray
/s/ Joel P. Hoekstra